## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| Northern Indiana Public Service Company | ) | |
| | ) | Cause No.      2:16-cv-516 |
| Plaintiff, | ) | |
| | ) | Judge Jon E. DeGuilio |
| vs. | ) | |
| | ) | Magistrate Judge Paul R. Cherry |
| Allianz Underwriters Ins. Co. f/k/a Allianz | ) | |
| Underwriters, Inc. American Empire Surplus | ) | |
| Lines Ins. Co. f/k/a Great AM. Surplus Lines | ) | |
| Ins. Co.; American Home Assurance Co.; | ) | |
| Century Indemnity Co., a/s/t Cigna Specialty | ) | |
| Ins. Co., f/k/a California Union Ins. Co.; | ) | |
| Lexington Ins. Co.; National Union Fire Ins. | ) | |
| Co. of Pittsburgh; Pennsylvania General Ins. | ) | |
| Co. a/s/t American Employers' Insurance | ) | |
| Co., TIG Insurance Co., a/s/t International | ) | |
| Ins. Co., a/s/t International Surplus Lines | ) | |
| Ins. Co.; | ) | |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSES OF TIG INSURANCE COMPANY

Defendant TIG INSURANCE COMPANY ("TIG"), by its attorneys SmithAmundsen LLC, hereby submits its Answer and Affirmative Defenses to Northern Indiana Public Service Company's ("NIPSCO") Complaint For Declaratory Judgment and Damages.

## I.      INTRODUCTION

1.      This is a complaint for declaratory relief and damages. NIPSCO seeks a declaration that the defendants, its comprehensive general liability ("CGL") excess and umbrella insurers, are obligated to provide coverage for NIPSCO's liability for environmental damage at the Town of Pines, Indiana, and reimburse it for its past and future defense and indemnity costs owed under the policies.

**ANSWER:**   TIG admits that NIPSCO has filed a complaint for declaratory relief and damages against certain insurers relating to environmental issues involving the Town of Pines, Indiana but TIG denies that NIPSCO is entitled to relief from TIG.

## II.   THE PARTIES

2.   Plaintiff NIPSCO, incorporated under the laws of Indiana, is a wholly owned subsidiary of NiSource Inc. with its principal place of business in Merrillville, Indiana. NIPSCO is a gas and electric service provider. NIPSCO's certificated service territory includes Porter County, Indiana.

**ANSWER:**   TIG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.   Defendants are national or multi-national insurers incorporated and with principal places of business in various states, as follows:

| **Insurer** | **Place of Incorporation** | **Principal Place of Business** |
|---|---|---|
| Allianz Underwriters Ins. Co., formerly known as Allianz Underwriters, Inc. | California | California |
| American Empire Surplus Lines Ins. Co., formerly known as Great Am. Surplus Lines Ins. Co. | Delaware | Ohio |
| American Home Assurance Co. | New York | New York |
| Century Indemnity Co., as successor to CIGNA Specialty Ins. Co., formerly known as California Union Ins. Co. | Pennsylvania | Pennsylvania |
| Lexington Ins. Co. | Delaware | Massachusetts |
| National Union Fire Ins. Co. of Pittsburgh, PA | Pennsylvania | New York |

| Insurer | Place of Incorporation | Principal Place of Business |
|---|---|---|
| Pennsylvania General Ins. Co. as successor to American Employers' Insurance Co. | Pennsylvania | Pennsylvania |
| TIG Insurance Co., as successor by merger to International Ins. Co., as successor to International Surplus Lines Ins. Co. | New Hampshire | New Hampshire |

**ANSWER:**     As to the allegations concerning other insurers, TIG lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  As to the allegations concerning TIG, TIG admits that its principal place of business is New Hampshire and denies that its place of incorporation is New Hampshire and answering further states that TIG is incorporated under the laws of the State of California.

## III.     JURISDICTION & VENUE

4.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 1391(c) because each defendant is either a corporation or individual subject to personal jurisdiction within this district at the time this action is commenced, and, further, a substantial part of the events giving rise to this controversy took place within this district.

**ANSWER:**     TIG states that the allegations contained in Paragraph 4 of the Complaint are legal conclusions to which no response is required but answering further TIG admits that TIG and NIPSCO are citizens of different states and admits that TIG is subject to personal jurisdiction in this district. TIG lacks knowledge or information sufficient to form a belief about the truth of those allegations as they relate to the other insurers and TIG admits that a substantial part of the events giving rise to this dispute took place within the district.

3

## IV.   THE INSURANCE POLICIES

5.     Due to the number of defendants and the bulk of the policies at issue, the policies have not been attached to this complaint. They are available for inspection and copying and will be made a part of the record during the course of this action. NIPSCO seeks coverage under all potentially applicable policies sold to NIPSCO by the defendant insurers and/or their corporate parents, affiliates, subsidiaries, successors and assigns, including but not limited to the following policies:

| Company | Policy Nos. | Dates |
|---|---|---|
| Allianz Underwriters Ins. Co., formerly known as Allianz Underwriters, Inc. | AUX5200040 AUX5200041 AUX5200326 AUX5200329 AUX5200330 AUX5200718 AUX5200719 AUX5200938 ABN10035 AUX5203179 | Mar. 1, 1980 to 1981 Mar. 1, 1980 to 1981 Mar. 1, 1981 to 1982 Mar. 1, 1981 to 1982 Mar. 1, 1981 to 1982 Mar. 1, 1982 to 1983 Mar. 1, 1982 to 1983 Mar. 1, 1983 to 1984 Jan. 1, 1984 to 1985 Mar. 1, 1985 to 1986 |
| American Empire Surplus Lines Ins. Co. f/n/a Great American Surplus Lines Ins. Co. | OCM00136 1CM00275 2CM00694 3CM01382 | Mar. 1, 1980 to 1981 Mar. 1, 1981 to 1982 Mar. 1, 1982 to 1983 Mar. 1, 1983 to 1984 |
| American Home Assurance Co. | 355511 | Jan. 1, 1969 to 1972 |

| **Company** | **Policy Nos.** | **Dates** |
|---|---|---|
| Century Indemnity Co., as successor to CIGNA Specialty Ins. Co., formerly known as California Union Ins. Co. | ZCV003011<br>ZCV003602<br>RDX1863997<br>ZCV005702<br>ZCV005703<br>ZCV005704<br>ZCV005705<br>ZCV006103<br>ZCV006104<br>ZCV006105,<br>ZCV006053<br>ZCV006054<br>ZCV006055<br>ZCX007828<br>ZCX007829 | Feb. 1, 1975 to 1978<br>Mar. 1, 1976 to 1977<br>Mar. 1, 1976 to 1977<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1982 to 1983<br>Mar. 1, 1982 to 1983<br>Mar. 1, 1982 to 1983<br>Mar. 1, 1983 to 1984<br>Mar. 1, 1983 to 1984<br>Mar. 1, 1983 to 1984<br>Mar. 1, 1985 to 1986<br>Mar. 1, 1985 to 1986 |
| Lexington Ins. Co. | GC5501837<br>5512871<br>5520662<br>5521172 | Mar. 1, 1977 to 1978<br>Mar. 1, 1978 to 1979<br>Mar. 1, 1980 to 1981<br>Mar. 1, 1982 to 1983 |
| National Union Fire Ins. Co. of Pittsburgh, PA | 1189838<br>ABN10035<br>9605834 | Mar. 1, 1978 to Jan. 1, 1979<br>Jan. 1, 1984 to 1985<br>Mar. 1, 1985 to 1986 |
| Pennsylvania General Ins. Co. as successor in interest to American Employers' Insurance Co. | A22-8500-269<br>AW-8500-582 | Jan. 1, 1969 to 1972<br>Jan. 1, 1972 to 1975 |
| TIG Insurance Co., as successor by merger to International Ins. Co., as successor to International Surplus Lines Ins. Co. | XSI6195<br>XSI6195<br>XSI6975<br>XSI7996<br>XSI7997<br>XSI8621<br>XSI8622 | Mar. 1, 1980 to 1981<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1981 to 1982<br>Mar. 1, 1982 to 1983<br>Mar. 1, 1982 to 1983<br>Mar. 1, 1983 to 1984<br>Mar. 1, 1983 to 1984 |

**ANSWER:**   TIG lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning policies issued by other insurers. TIG admits that its predecessor entity issued certain policies to NIPSCO but states that it has had no opportunity to inspect the alleged polices that NIPSCO contends are in its possession and thus lacks knowledge or

information sufficient to form a basis as to the truth of the allegations concerning TIG and reserves its right to object to NIPSCO's purported copies to the extent that they are inconsistent with TIG's records.

## V.     THE UNDERLYING CLAIMS: THE TOWN OF PINES ACTIONS

6.     NIPSCO is a utility that operates several generating stations throughout the State of Indiana. These power plants burn coal to generate electricity. Certain byproducts result from the coal-combustion process. Beginning in 1967, NIPSCO contracted with certain haulers, including Brown, Inc. and its affiliated entities (collectively "Brown"), to dispose of coal combustion by-products ("CCBs"). Brown disposed of NIPSCO CCBs in Yard 520, a restricted waste facility, in the Town of Pines, Indiana ("Town of Pines"). The disposal of NIPSCO CCBs in Yard 520 continued until approximately 2001. In addition, Town of Pines records indicate that the Town of Pines, may have used CCBs to construct roads and serve as fill in certain areas of the Town of Pines.

**ANSWER:**     TIG admits that NIPSCO is a utility that operates several generating stations throughout the State of Indiana and that some of those plants burn coal. TIG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 6 of the Complaint.

7.     NIPSCO and Brown are parties to a January 24, 2003 Administrative Order of Consent ("AOCI") mandated by the United States Environmental Protection Agency ("USEPA") and the Indiana Department of Environmental Management ("IDEM") arising from the Town of Pines Superfund Site, National Superfund Database Identification Number INN000508071 (hereafter the "Superfund Site"). A copy of the AOCI is attached as Exhibit A.

**ANSWER:**   TIG admits that NIPSCO and Brown are parties to an Administrative Order of Consent ("AOCI") and that the AOCI is attached to the Complaint. TIG states that the AOCI is a written instrument that speaks for itself and to the extent further answer is required TIG denies any of NIPSCO's characterizations of that instrument that are inconsistent with the AOCI itself.

8.      In its AOCI order, the USEPA found that elevated levels of boron and/or molybdenum above current USEPA guidelines were present in certain wells in the Town of Pines.

**ANSWER:**   TIG admits that the AOCI is attached to the Complaint and states that the AOCI is a written instrument that speaks for itself and to the extent that further answer is required TIG denies any of NIPSCO's characterizations of the AOCI that are inconsistent with the instrument itself.

9.      Pursuant to AOCI, NIPSCO was required to install municipal water service in certain areas of the Town of Pines.

**ANSWER:**   TIG states that the AOCI is a written instrument that speaks for itself and to the extent that further answer is required TIG denies any of NIPSCO's characterizations of the AOCI that are inconsistent with the document itself.

10.      NIPSCO was obligated to pay "response costs" and "oversight costs" incurred by the USEPA and IDEM in their administration of AOCI.

**ANSWER:**   TIG states that the AOCI is a written instrument that speaks for itself and to the extent that further answer is required TIG denies any of NIPSCO's characterizations of the AOCI that are inconsistent with the document itself.

11.     On April 5, 2004, NIPSCO and Brown entered into an amendment to AOCI (hereinafter "Amendment to AOCI") that specified municipal water service be extended to a larger area of the Town of Pines; that bottled water be supplied to this area until the extension is completed; and that bottled water be supplied to certain residences outside the area until an investigation into the presence of certain hazardous substances could be completed. A copy of the Amendment to AOCI is attached as Exhibit B.

**ANSWER:**     TIG admits that the Amendment to the AOCI is attached to the Complaint and TIG states that the Amendment is a written instrument that speaks for itself and to the extent further answer is required, TIG denies any of NIPSCO's characterizations of that instrument that are inconsistent with the Amendment to the AOCI itself.

12.     On April 5, 2004, NIPSCO and Brown entered into Administrative Order of Consent II ("AOCII") that provided for the performance of a Remedial Investigation and Feasibility Study in or near the Town of Pines. AOCII specified that NIPSCO and Brown complete an investigation into the nature and occurrence of certain hazardous substances in groundwater, and the potential impacts of CCBs within the area of investigation, a copy of which is attached as Exhibit C.

**ANSWER:**     TIG admits that an Administrative Order of Consent II ("AOCII) is attached to the Complaint and TIG states that AOCII is a written instrument that speaks for itself and TIG denies any of NIPSCO's characterizations of that instrument that are inconsistent with the AOCII itself**.**

13.     On January 9, 2004, the Hoosier Environmental Counsel ("HEC"), Janet Nona, and Cathi Murray filed a suit styled as *Hoosier Environmental Council, et al. v. Northern Indiana Public Service Co.*, U.S. District Court for the N.D. of Indiana, Case No. 04 CV 17 RM.

("HEC Lawsuit"), a citizens suit against NIPSCO under the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq. (RCRA"). On January 14, 2004, the HEC plaintiffs filed a First Amended Complaint, a copy of which is attached as <u>Exhibit D</u>.

**ANSWER:**   TIG admits that a First Amended Complaint filed by Hoosier Environmental Counsel ("HEC") and others is attached to the Complaint and states that the First Amended Complaint is a written instrument that speaks for itself and denies any of NIPSCO' characterizations of that First Amended Complaint that are inconsistent with the Amended Complaint itself.

14.    The HEC Lawsuit alleged that NIPSCO "contributed and has contributed to the disposal of waste which may present an imminent and substantial danger to human health and the environment in the Town of Pines." The HEC Lawsuit alleges that NIPSCO CCBs were disposed in Yard 520 and also used in the construction of roads in and around the Town of Pines.

**ANSWER:**   TIG states that the HEC First Amended Complaint is a written instrument that speaks for itself and TIG denies any of NIPSCO's characterizations of that First Amended Complaint that are inconsistent with the document itself.

15.    The HEC Lawsuit sought a declaration that (i) NIPSCO was violating the provisions of RCRA; (ii) NIPSCO be ordered to perform comprehensive well testing of all wells in and around the Town of Pines where deposits of power plant waste may present a risk of contamination; (iii) NIPSCO be ordered to provide safe drinking water for all well users in and around the Town of Pines threatened by the disposal of power plant waste; and (iv) awarded plaintiffs their costs and reasonable expenses. The HEC lawsuit settled on June 2, 2005.

**ANSWER:**   TIG states that the First Amended Complaint is a written document that speaks for itself and denies any of NIPSCO's characterizations of the First Amended Complaint

that are inconsistent with the document itself. TIG lacks knowledge or information sufficient to form a belief about the truth of the allegation that the action settled on June 2, 2005.

16.    On February 26, 2004, Debra Loyd and approximately 90 other plaintiffs who are residents of the Town of Pines filed an action against NIPSCO and Brown styled as Loyd v. Northern Indiana Public Service Co., et al., Superior Court of LaPorte County, Indiana, Case No. 46D02-0402-PL-033 ("Loyd Lawsuit"). The Loyd Lawsuit alleges that NIPSCO produced CCBs that resulted from the operation of NIPSCO's power plants, a copy of the Loyd complaint is attached as Exhibit E.

**ANSWER:**    TIG admits that Debra Loyd and others filed a lawsuit against NIPSCO and Brown and admits that the Loyd complaint is attached to the instant complaint. TIG further states that the Loyd complaint is a written document that speaks for itself and denies any of NIPSCO's characterizations of that complaint that are inconsistent with the document itself.

17.    The Loyd Lawsuit asserted that defendants' actions created a public nuisance and sought damages for personal injury, economic loss, medical monitoring and diminution of property value.

**ANSWER:**    TIG states that the Loyd lawsuit is a written document that speaks for itself and denies any of NIPSCO's characterizations of the Loyd lawsuit that are inconsistent with the document itself.

18.    The Loyd Lawsuit alleged that NIPSCO CCBs were disposed in Yard 520 and were also used in the construction of roads in and around the Town of Pines. The Loyd Lawsuit settled on May 30, 2007.

**ANSWER:**    TIG states that the Loyd lawsuit is a written document that speaks for itself and it denies any of NIPSCO's characterizations of the Loyd lawsuit that are inconsistent

with the document itself. TIG lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the Loyd lawsuit settled on May 30, 2007.

19.     The Superfund Site, the Loyd Lawsuit and the HEC Lawsuit are collectively referred to as the "Town of Pines Actions." In this lawsuit, NIPSCO seeks defense and indemnity coverage from the defendant insurers for the Town of Pines Actions. This lawsuit is the re-filing and continuation of prior coverage litigation that is prompted by USEPA's recent determination of the scope of work and selected remedy mandated at the Superfund Site.

**ANSWER:**     TIG admits that NIPSCO is using the term "Town of Pines Actions" to refer collectively to the Superfund site, the Loyd lawsuit and the HEC lawsuit. TIG also admits that NIPSCO seeks defense and indemnity from defendant insurers and TIG denies that it is entitled to defense and indemnity from TIG and lacks knowledge or information sufficient to form a belief as to the allegations that other insurers owe NIPSCO defense or indemnity. TIG admits that there was prior coverage litigation but denies NIPSCO's characterizations of this action as a "continuation" of the prior litigation or that it is prompted by USEPA action.

20.     From 2005 through 2011, NIPSCO and various insurers were parties to two consolidated lawsuits concerning insurance coverage for the Town of Pines Actions: Continental Ins. Co. v. Northern Indiana Public Service Co., (No. 2:05-CV-156), and Northern Indiana Public Service Co. v. CNA Insurance, (No. 2:05-CV-210) (the "Prior Coverage Action").

**ANSWER.** TIG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint.

21.     In 2009 and 2010, NIPSCO entered settlement agreements with certain insurers. In 2011 and 2012, NIPSCO entered tolling and standstill agreements with certain non-settling

insurers. In 2011, the Prior Coverage Action was dismissed with prejudice as to the setting insurers and dismissed without prejudice as to the non-settling insurers.

**ANSWER:** TIG admits that NIPSCO and TIG entered into tolling and standstill agreements. TIG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint.

22. Since the Prior Coverage Action was dismissed, the USEPA continued its investigation into alleged contamination at the Superfund Site. USEPA issued a Remedial Investigation Report in March 2010, and a human health and an ecological risk assessment in July 2012.

**ANSWER:** TIG admits that USEPA has investigated alleged contamination at the Superfund Site and that the USEPA issued a Remedial Investigation Report in 2010 and a human health and ecological risk assessment in July 2012. TIG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 22 of the Complaint.

23. In March 2016, NIPSCO and USEPA signed an Administrative Settlement Agreement and Order on Consent (referred to as the "Removal AOC") for NIPSCO to conduct time-critical removal work of coal ash. Under the removal AOC, NIPSCO agreed to identify areas within the Town of Pines and/or within the Area of Investigation where areas with coal ash present unacceptable exposure risks, remove the contaminated soil, dispose of it properly off-site, and restore the property using clean fill materials. To date, NIPSCO has incurred substantial costs and expense in complying with the Removal AOC.

**ANSWER:** TIG admits that in March 2016, NIPSCO and USEPA signed an Administrative Settlement Agreement and Order On Consent ("Removal AOC"). TIG states that

the Removal AOC is an instrument that speaks for itself and denies any of NIPSCO's characterizations of that instrument that are inconsistent with the document itself. TIG admits that NIPSCO has incurred some expenses but denies NIPSCO's characterization of those expenses.

24.    On September 30, 2016, the USEPA issued its Record of Decision ("ROD"), setting forth the "selected remedy" for environmental remediation at the Superfund Site. A copy of the ROD is attached as Exhibit F. The ROD imposes substantial additional costs on NIPSCO, which costs are covered under the policies. The USEPA's issuance of the ROD triggers the expiration of the tolling and standstill agreements.

**ANSWER:**    TIG admits that the USEPA issued a document entitled Record of Decision ("ROD") on September 30, 2016 and that it is attached to the Complaint. TIG states that the ROD is an instrument that speaks for itself, denies any of NIPSCO's characterizations of that instrument that are inconsistent with the terms of the ROD and denies that any costs are covered under TIG's policies.

25.    NIPSCO has incurred, and will continue to incur, substantial costs and expenses for the environmental investigation and remediation activities in the Town of Pines Actions; in particular, the additional costs and expenses imposed by the USEPA's ROD. NIPSCO has completed work on numerous affected properties and expects remediation costs and efforts to continue through 2017. To date, NIPSCO has incurred costs exceeding $12 million and expects final total costs to exceed $24 million. NIPSCO is entitled to defense and indemnity coverage for all of these costs.

**ANSWER**:   TIG denies that NIPSCO is entitled to defense and indemnity coverage from TIG. TIG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of the Complaint.

## VI.   DECLARATORY JUDGMENT & DAMAGES

26.   NIPSCO incorporates by reference and realleges ¶¶ 1 through 25 as if fully set forth herein.

**ANSWER:**   TIG incorporates its Answers to Paragraphs 1 through 25 as its Answer to Paragraph 26.

27.   NIPSCO seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the defendant insurers owe NIPSCO a duty to defend and indemnify NIPSCO for the Town of Pines Actions alleging CCB-derived contamination during the various insurance policy periods and reimburse NIPSCO for all past and future defense and indemnity costs, including the additional costs and expenses imposed by the ROD.

**ANSWER:**   TIG admits that NIPSCO is seeking a declaratory judgment but denies that NIPSCO is entitled to the relief that it seeks as against TIG. TIG lacks knowledge or information sufficient to form a belief as to the truth of the allegations that other insurers owe NIPSCO defense and indemnity.

28.   The insurance policies issued by the defendants provide coverage against loss and legal liability arising from the Town of Pines Actions. The environmental impacts which resulted in the Town of Pines Actions constitute either "property damage" or "bodily injury" caused by an "accident" or "occurrence" or "personal injury" within the meaning of the policies.

**ANSWER:**   TIG states that the allegations contained in Paragraph 28 of the Complaint are legal conclusions to which no response is required but answering further TIG denies the allegations contained in Paragraph 28 of the Complaint as they pertain to TIG.

29.   The insurance policies issued by the defendants impose an obligation on the issuing defendants to defend NIPSCO and/or reimburse defense costs to NIPSCO with respect to the Town of Pines Actions.

**ANSWER:**   TIG states that the allegations contained in Paragraph 29 of the Complaint are legal conclusions to which no response is required but answering further TIG denies the allegations contain in Paragraph 29 of the Complaint as they pertain to TIG.

30.   Defendants, as umbrella and/or excess carriers, are obligated under each of the umbrella and/or excess policies, subject only to the limits of liability, if any, to pay in full NIPSCO's legal liability when the limits of the applicable underlying policies are exhausted, as has occurred or will occur in this case.

**ANSWER:**   TIG states that the allegations contained in Paragraph 30 of the Complaint are legal conclusions to which no response is required but answering further TIG denies the allegations contained in Paragraph 30 of the Complaint as they pertain to TIG aside from the fact that TIG issued excess policies and that exhaustion is necessary before TIG policies could potentially be implicated.

31.   NIPSCO seeks a declaration that the defendants are obligated to provide NIPSCO with coverage under their policies for the costs of defending and/or resolving the Town of Pines Actions.

**ANSWER:**   TIG admits that NIPSCO is seeking a declaration but denies that it is entitled to such relief as it pertains to TIG.

15

32.     The claims against NIPSCO arise from property damage and/or occurrences happening in years 1967 through 2001. Each of the defendants insured NIPSCO for some portion of that time.

**ANSWER:**     TIG states that the allegations contained in Paragraph 32 of the Complaint are legal conclusions to which no response is required. Answering further, TIG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint as they relate to other insurers and TIG admits that its predecessor issued certain policies to NIPSCO but denies all of the remaining allegations contained in Paragraph 32 of the Complaint as they pertain to TIG.

33.     As to the policies issued by the defendants, the required premiums have been paid in full, and all other pertinent conditions to coverage have been satisfied, excused or waived.

**ANSWER:**     TIG admits that premiums were paid to it, lacks knowledge sufficient to form a belief as to the truth of allegations concerning other carriers and denies the remaining allegations contained in Paragraph 33 of the Complaint.

34.     A controversy exists as to the nature and scope of NIPSCO's rights and the defendants' obligations under these policies of insurance regarding the claims asserted against NIPSCO.

**ANSWER:**     TIG states that the allegations contained in Paragraph 34 of the Complaint are legal conclusions to which no response is required but answering further TIG denies those allegations.

35.     Declaratory relief will resolve the dispute between the parties and determine their respective rights and obligations.

**ANSWER:**     TIG states that the allegations contained in Paragraph 35 of the Complaint are legal conclusions to which no response is required but answering further, TIG denies the allegations and denies that NIPSCO is entitled to any relief against TIG.

## AFFIRMATIVE AND SEPARATE DEFENSES

### FIRST DEFENSE

The Complaint fails to state claims upon which relief can be granted against TIG.

### SECOND DEFENSE

Some or all of NIPSCO'S Complaint for Declaratory Judgment ("Complaint") and/or causes of action may be barred by time limitations established by statute or contract.

### THIRD  DEFENSE

NIPSCO'S Complaint and/or causes of action are barred to the extent NIPSCO failed to mitigate, minimize or avoid any loss allegedly sustained.

### FOURTH  DEFENSE

There is no coverage or duty pay any "ultimate net loss" to the extent NIPSCO failed to comply with the conditions of any insurance contract issued by TIG.

### FIFTH  DEFENSE

There is no coverage or duty to pay "ultimate net loss" to the extent any alleged tender by NIPSCO was untimely and prejudiced TIG.

### SIXTH  DEFENSE

There is no coverage or duty to pay ultimate net loss to the extent any liability for which NIPSCO seeks coverage was not caused by an "occurrence", as defined in any insurance contract issued by TIG.

17

## SEVENTH  DEFENSE

There is no coverage or duty to pay "ultimate net loss" to the extent any liability for which NIPSCO seeks coverage does not relate to "property damage", as defined in any insurance contract issued by TIG.

## EIGHTH  DEFENSE

There is no coverage or duty to pay "ultimate net loss" to the extent any alleged "property damage" did not occur during the policy period of any insurance contract issued by TIG.

## NINTH  DEFENSE

NIPSCO'S claims against TIG may be barred in whole or in part by the equitable doctrines of waiver, estoppel, laches or ratification.

## TENTH DEFENSE

NIPSCO may have failed to comply with all the terms and conditions of the TIG policies, including those requiring proper and timely notice of any purported accidents, occurrences, claims or suit for which coverage was sought.

## ELEVENTH  DEFENSE

There is no coverage under any TIG policy at issue for "bodily injury" or "property damage" caused intentionally by or at the direction of NIPSCO.

## TWELFTH  DEFENSE

There is no coverage under any of the TIG policies at issue for claims arising from conditions that were known, or damages that were expected, in whole or in part, by NIPSCO before the inception of any or all of the alleged TIG policies.

## THIRTEENTH  DEFENSE

The losses for which coverage is sought under the TIG policies at issue may have occurred in whole or in part outside the period of any or all of the TIG policies.

## FOURTEENTH  DEFENSE

The TIG policies at issue did not provide coverage for any liability arising out of the discharge, dispersal, release or escape of smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, if such discharge, disposal release or escape was sudden and accidental.

## FIFTEENTH  DEFENSE

Some of the TIG policies at issue did not provide coverage for bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants (regardless of whether the discharge, dispersal, release or escape was sudden and accidental), or for any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

## SIXTEENTH  DEFENSE

To the extent NIPSCO or someone acting on its behalf concealed, misrepresented, or negligently failed to disclose material facts for the purpose of inducing TIG to issue or renew any policy or policies at issue, any claims thereunder are barred.

## SEVENTEENTH  DEFENSE

To the extent some or all of the matters for which coverage is sought under the TIG policies at issue were in the nature of fines, penalties, punitive damages or exemplary damages, those claims may be barred by policy provisions, applicable law, and/or public policy.

## EIGHTEENTH  DEFENSE

Any coverage afforded under the TIG policies is limited to damages for "personal injury," "bodily injury," or "property damage" occurring within its policy period and caused by an "occurrence."

## NINETEENTH  DEFENSE

There is no coverage under the TIG policies for plaintiff's ordinary, expected costs of doing business, including providing coverage for any claim for the costs of complying with federal, state or local rules, regulations, ordinances, or laws or for the reimbursement of remedial costs, cleanup costs or other costs incurred in complying with or seeking to invert injunctive and/or other equitable remedies.

## TWENTIETH DEFENSE

The TIG policies at issue did not apply to any liability for damage to property owned, occupied, used by, rented to, or in the care, custody or control of NIPSCO, or anyone acting on NIPSCO'S behalf, or as to which NIPSCO or anyone acting on NIPSCO'S behalf was for any purpose exercising physical control.

## TWENTY-FIRST  DEFENSE

To the extent other insurance is available to cover a loss covered by any or all of the alleged TIG policies at issue, the TIG policies, or any of them, may operate in excess of, and not contribute with, such other insurance.

### TWENTY-SECOND  DEFENSE

TIG's coverage obligations, if any, are governed by the limits stated in the alleged TIG policies, including any applicable aggregate limit and any "other insurance" or "prior insurance and non-cumulation of liability" provisions, and such coverage obligations cease upon the exhaustion of applicable limits of coverage.

### TWENTY-THIRD DEFENSE

No action shall lie against TIG unless as a condition precedent thereto, NIPSCO shall have fully complied with all the terms and conditions of the TIG policies at issue or until the amount of NIPSCO'S obligations to pay shall have been filially determined.

### TWENTY-FOURTH DEFENSE

To the extent NIPSCO voluntarily incurred expenses or other obligations before notice to and without the prior consent of TIG, such expenses and obligations are not covered by any policy issued by TIG.

### TWENTY-FIFTH  DEFENSE

To the extent that some or all of the matters for which indemnification is sought are uninsurable as a matter of law or public policy, TIG owes NIPSCO no duty of defense or indemnification.

### TWENTY-SIXTH  DEFENSE

To the extent any liability for which NIPSCO seeks coverage related to sites purchased, acquired, used by NIPSCO or at which NIPSCO transported or generated waste after the expiration of any policy allegedly issued by TIG to NIPSCO, TIG owes no duty of defense or indemnification.

## TWENTY-SEVENTH  DEFENSE

To the extent NIPSCO failed to cooperate with TIG, such failure violated NIPSCO'S obligations under any policy issued by TIG and no coverage would be afforded.

## TWENTY-EIGHTH  DEFENSE

Even if, and to the extent, coverage exists under any policy issued by TIG, TIG is not liable for amounts incurred in preventing the threat of future contamination.

## TWENTY-NINTH  DEFENSE

To the extent any liability for which coverage is sought by NIPSCO was assumed by contract, no coverage exists under any policy issued by TIG.

## THIRTIETH DEFENSE

To the extent NIPSCO failed to take all lawful and proper measures to protect the property of others in its care, custody or control, or for which it became legally liable, coverage is not available under any policy issued by TIG.

## THIRTY-FIRST DEFENSE

To the extent NIPSCO impaired any right of subrogation to TIG, under any policy issued by it, TIG owes NIPSCO no duty of defense or indemnification.

## THIRTY-SECOND DEFENSE

To the extent any coverage exists under the alleged TIG policies at issue, TIG's liability, if any, is limited to its proportionate share of bodily injury or property damage that took place during its policy periods, taking into account all applicable insurance which NIPSCO had or has had with other insurers, any self-insurance, and any other factors which bear on this issue.

## THIRTY-THIRD DEFENSE

To the extent any coverage exists under the TIG policies at issue, TIG is entitled to a setoff of any sums received by NIPSCO in settlement of claims, disputes, agreements or other matters with any other entities.

## THIRTY-FOURTH DEFENSE

The policies allegedly issued by TIG are excess policies and TIG has no obligations under any such policies until the underlying insurance has been exhausted.

## THIRTY-FIFTH DEFENSE

To the extent that NIPSCO asserts a duty to defend, the policies allegedly issued by TIG are excess policies that do not contain a duty to defend and to the extent those policies include defense costs under the definition of "ultimate net loss" there is no obligation thereunder until all underlying coverage has been exhausted.

## RESERVATION

TIG reserves its right to amend its answer by adding defenses or affirmative defenses, counter claims, cross-claims or by instituting fourth-party actions as additional facts are obtained through investigation and discovery. TIG also reserves the right to incorporates herein any separate defenses pled by other insurers.

WHEREFORE, TIG prays that NIPSCO's Complaint for Declaratory Judgment be dismissed, that NIPSCO obtain no relief against TIG, for an award of costs in favor of TIG and for such additional relief as this Court deems just and equitable.

Respectfully submitted,

TIG Insurance Co., as successor by merger to International Ins. Co., as successor to International Surplus Lines Ins. Co.

By:   s/Timothy J. Fagan
                One of its Attorneys

Timothy J. Fagan (ARDC # 6202552)
Clay H. Phillips (ARDC # 2199041)
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago Illinois  60601
(312) 894-3200
(312) 894-3210 – Fax
E-Mail:  tfagan@salawus.com
E-Mail:  cphillips@salawus.com
**Attorneys for Defendant, TIG Insurance Co.**